JOSEPH BORK, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Embezzlement — indictment — allegations as to kind of property and its value — when sufficient — what evidence inadmissible to prove embezzlement*

An indictment for embezzlement described the property as "a large sum of money, to wit: the sum of $1,100."

*Held*, that the indictment was not required to describe the particular kind of money taken, viz.: bank-bills, coin, etc., and that, in that respect, the indictment was sufficient.

That the indictment was, however, defective in not stating the value of the money taken, and that a conviction thereon should, for that reason, be reversed.

Upon the trial of an indictment against the treasurer of the city of Buffalo for embezzlement, receipts given by him for the tax-rolls, placed in his hands for collection, together with the tax-rolls themselves were receceived in evidence, against his objection and exception.

*Held*, that, in the absence of evidence showing that he had received the money authorized to be collected by the tax-rolls, the receipts were inadmissible.

CERTIORARI to the Oyer and Terminer of Erie county, to review the conviction of the defendant for embezzling money of the city of Buffalo, in his hands as the treasurer of said city.

*A. G. Rice* and *W. H. Gurney*, for the plaintiff in error. The indictment is clearly and fatally defective in not describing the money alleged to have been embezzled, and in not averring that it had any value. It is not sufficient to charge the offense in the language of the statutes, but the acts must be described. (Arch. Cr. Pl., 24; 1563 Chitty Cr. L., 24, 980; 2 Hawk. P. C., book 2, chap. 25, § 113.) The property embezzled or stolen must be described so that it can be identified. (2 Bishop Crim. Law, § 274 and cases cited; 2 N. Y. S. C. R. [Thompson & Cook], 383; The *People* v. *Howe*, Arch Cr. Pl., 24, 156; *Rex* v. *Chalkley*, Russ & Ry., 258; 1 Chitty Cr. L., 169; 2 Hale P. C., 182; 2 Hawk. P. C., book 4, chap. 25, § 74; *Rex* v. *Tyer*, Russ & Ry., 402; *Same* v. *Furniaux*, id., 334; *State* v. *Stimpson*, 4 Zabriskie, 9; *State* v. *Longbottom*, 11 Humph., 37.) The same doctrine is laid down in Hale's P. C., 182, 183; *State* v. *Murphy*, 6 Ala., 45; *Commonwealth* v. *Smith*, 1 Mass., 245; *Smith* v. *State*, 33 Ind., 159; 1 Whart. Cr. Law, §§ 363, 609; *People* v. *Ball*, 14 Cal., 101; also in *Commonwealth* v. *Cahill*, 12 Allen, 540; 4 Sarg. & R., 194; see Roscoe's C. Ev., p. 417; *People* v. *Paterson*, 9 Cal., 313; 2 Bishop's C. L., § 356 [5th ed.]; 2 Bishop's C. Prec., § 321 [2d ed.].) If the property is money, it is not enough to describe it as so many dollars, but the number and description of the pieces must be stated or the value given. (*State* v. *Stimson*, 4 Zabriskie, 9; *Rex* v. *Foye*, 1 Russ & Ry., 481; *Same* v. *Ferniaux*, Russ & Ry., 335; *Same* v. *Flower*, S. D. & B., 512; *Same* v. *Tyer*, Russ & Ry., 402; *Same* v. ——— 2 Hale, 185; 1 Chitty's Crim. Law, 238 and notes; 3 id., 946, 947 and notes; 2 Arch., 353, note; 2 Colby C. L., 134, 135; 2 Arch., 256, note; 11 Hump., 30; Barb. Cr. Law, 158, 178–179–180.) When the money is not described as the legal coin of the State, of the value of which the court will take judicial notice, its value must be stated. See cases cited under last paragraph, and also *Payne* v. *Barns*, 5 Barb., 465; *Commonwealth* v. *Smith*, 1 Mass., 245; 5 Cush., 365; Colby's Cr. L., 134, 135; 2 Bishop's Cr. L., 319, 375; *People* v. *Howe*, 2 N. Y. Sup. Ct. [Thompson and Cook], 383; *State* v. *Longbottom*, 11 Humph., 30; 2 Arch., 354, notes.) The people have not established the *corpus delicti* by other evidence than the declarations of the defendant. That evidence will not legally establish it. *People* v. *Hennesy*, 15 Wend.,

147; *People* v. *Badgley*, 16 id., 53; *People* v. *Ruloff*, 3 Par. C. R., 401; *People* v. *McMahon*, 15 N. Y., 384; *People* v. *Porter*, 2 Par. C. R., 14; *Galragan* v. *People*, 1 id., 374; *People* v. *Humphrey*, 7 Johns., 314; *Ruloff* v. *People*, 18 N. Y., 179.)

*R. Titus* (District Attorney,) and *D. M. Lockwood*, for the people. The allegations in the indictment are in the exact language of the statute, both in regard to description and value — this is sufficient. (2 Bishop on Crim. Law and Prac., § 319; 1 Bishop on C. S. & P., § 393; *People* v. *McKinny*, 10 Mich. Rep., 55; *U. S.* v. *Clark*, Crabb's Rep., 584; *Riley* v. *State*, 32 Texas R., 763; *U. S.* v. *Patterson*, 2 McLean Rep., 254, 432; *U. S.* v. *Gooding*, 12 Wheat. R., 460; *U. S.* v. *Mills*, 2 Pet. R., 142; *State* v. *Smith*, 13 Kan. R., 247; 2 Bishop C. L., § 315; *State* v. *Lincoln*, 11 Allen, 233; *Olin* v. *State*, 37 Ala., 135; *People* v. *Stetson*, 4 Barb., 151; 1 Bishop C. L., § 257; 16 Conn., 47; 33 Me. R., 498.)

SMITH, J. :

The defendant held the office of treasurer of the city of Buffalo. The indictment was found under the provisions of section 35, title two of the revised charter of said city (Laws 1870, ch. 519), which is in these words : " The treasurer, upon conviction of having lent or deposited in a bank not designated by the common council, or unlawfully appropriated to his own use any money of the city received by him, shall be deemed guilty of embezzlement." A question was raised in the court below, by motion to quash, and motion in arrest, as to the sufficiency of the indictment. It was objected that the indictment was insufficient for the reason that it did not particularly describe the money alleged to have been embezzled, nor state its value. The property was described in the indictment as " a large sum of money, to wit, the sum of $1,100, of it, the said city of Buffalo, received by him, the said Joseph Bork, as such treasurer," etc. It is insisted by the defendant's counsel that the indictment should describe the particular kind of money. We think the indictment is sufficient in that respect. To require it to show whether the money embezzled was coin, government notes, bank bills or the like, would be to require

what is ordinarily impossible in the case of public officers, such as treasurers of large municipal corporations. Such officers are not, as the servants of private individuals are, in most cases, under the immediate supervision and control of their principal; and they are not required or expected to keep their accounts in such a way that the kind of money received or disposed of by them in a given case can be traced or identified. The funds which the treasurer is alleged to have embezzled in the present case may have been a mere credit in a bank, and not money at all, and yet if he treated the credit as cash in his hands belonging to the city, proof that he embezzled it would support an indictment for embezzling money. The rule requiring certainty in an indictment is not to be so applied as to defeat the ends of public justice. The case of *The People* v. *McKenney* (10 Mich., 55), cited by the counsel for the prosecution, seems to us to have adopted the true rule in this respect.

The want of an averment of value is more serious. In embezzlement, as in larceny, the value of the property determines the grade of the offense and the degree of the punishment (2 R. S., 678, § 59), and it is essential that the thing embezzled should be of some value. If it is necessary to prove value it is necessary to allege it. The allegation that the property was "money to wit, $1,100," is not an averment of value nor one from which it can be said judicially that the thing embezzled had value, or if it had value, what was its amount? Had it been averred that the money embezzled was lawful money of the gold coinage, or the silver coinage, or the legal tender notes of the government of the United States, the court could have taken judicial notice of its value. But as it was competent, as we have seen, for the prosecution to prove under the indictment that it was money in either or all of those forms, or dollars of foreign coinage, or in bank notes, or in the shape of a mere credit, which the treasurer had treated as cash, it was necessary to allege that it had value, and what value, as an ingredient of the offense. It was easy for the pleader to do so. Nothing is more common in indictments for stealing or embezzling bank notes than to allege their value, in addition to giving a description of their denomination, as, for instance : " One hundred bank notes

for the payment of five dollars each, of the value of five dollars each." Such an allegation was contained in the Michigan case above cited. The reasons which induce us to hold the indictment fatally defective in this particular, are more fully set forth in the case of *State* v. *Simpson*, decided in New Jersey (4 Zabriskie, 4).

On other grounds, also, we think the conviction should be reversed. Whatever evidence there is in the case of any criminal act, on the part of the defendant, consists wholly of his confessions. Aside from them there is no proof of the *corpus delicti*. The cash-book kept in the treasurer's office, the receipts given by him, whether of money or tax-rolls, and the two checks of $1,100 each, of themselves, prove no embezzlement. The cash-book and the money receipts show that money went into the treasurer's hands; the receipts for tax-rolls tend to show sources from which he might have received money; but the books and the receipts show nothing as to the disposition he made of what he received. The most that can be claimed for them is that, in the absence of any satisfactory accounting on the part of the defendant, they tend to show that he received a large sum of money belonging to the city, and possibly that he was a defaulter to a large amount. But it is necessary to prove something more than a defalcation on his part to convict him of embezzlement. The checks, on their face, show nothing criminal, and they would have no significance whatever, but for the proof of defendants' admissions that they represented money which he took from the city treasury and delivered to Lyon & Co.

We think the court erred in receiving the tax-roll receipts in evidence. There was no proof that the defendant had received the money which the tax-rolls authorized the collection of. But the evidence that they had been placed in his hands was calculated to prejudice the defendant in the minds of the jurors, by creating the impression that he was called on to account, at the trial, for their entire amount. The learned judge who presided evidently endeavored to guard the jury against that impression, by instructing them that it was not to be presumed that the moneys assessed upon the tax-rolls had been collected by the prisoner. Why, then, was the evidence received ? The very next sentence in the charge states the reason. It was to show that the defendant had

sources from which to receive money belonging to the city. What legitimate purpose was served by showing that he might have received money on the tax-rolls when there was no evidence that he had done so, and the law forbade it to be presumed. We think the testimony was erroneously received; that it tended to withdraw the minds of the jury from the real issue, and to call on the defendant to meet issues not presented by the indictment, and that the injurious effect of it was not cured by the charge.

Even if the admissions of the defendant be taken into the account, the only evidence that the defendant embezzled the sum of $1,100 specified in the indictment is that he lent it to the firm of Lyon & Co., in which firm he was a partner. It was charged in the indictment that he embezzled the money by appropriating it to his own use. Whether the act of lending it to Lyon & Co., he being a member of the firm, was an appropriation to his own use, within the meaning of the statute, the act of lending being of itself an embezzlement, is a question not free from doubt, but we need not decide it, as we are of the opinion the conviction must be reversed on other grounds.

HARDIN, J., concurred ; TALCOTT, P. J., not voting.

Conviction reversed, and proceedings remitted to the Erie Oyer and Terminer.